UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SYNTEK CAPITAL, AG and SYNTEK CAPITAL
BETEILIGUNGS GmbH,

    Plaintiffs,

- against -

EDWARD J. WELCH and KIMBERLY A. FAIRBANKS,
as Personal Representative of THE ESTATE OF
GREGORY K. FAIRBANKS, Deceased,

    Defendants

Docket No. _____

## COMPLAINT

Plaintiffs Syntek Capital, AG and Syntek Capital Beteiligungs GmbH (collectively "Syntek"), by and through their attorneys, allege, upon personal knowledge as to their own acts and as to all other matters upon information and belief, as follows:

### Nature of the Action

1. Syntek brings this action for compensatory damages arising out of its approximately $10 million investment in a company called C2 Media LLC ("C2") on February 23, 2001.

2. To induce Syntek's $10 million investment, Edward J. Welch ("Welch"), the Chief Financial Officer of C2, and Gregory K. Fairbanks ("Fairbanks"), the CEO of C2, in concert with others, made material misrepresentations to Syntek concerning C2's financial results. In particular, and as fully alleged below, Welch and Fairbanks repeatedly and recklessly represented that C2 had generated $7.8 million of earnings before interest, taxes, depreciation and amortization ("EBITDA") for the nine-month period ended September 30, 2000 and that C2

would generate $7 million of EBITDA and $15.9 million of *pro forma* EBITDA for the full year ending December 31, 2000. Welch and Fairbanks also omitted large items of expense in monthly financial statements delivered to Syntek.

3. Less than three months after making its $10 million investment, Syntek learned that the representations made by Welch and Fairbanks: (1) that C2 had generated EBITDA of $7.8 million for the nine-month period ended September 30, 2000; and (2) that C2 would generate $7 million of EBITDA, had been false and misleading. Syntek's $10 million investment is now worthless.

## Parties

4. Plaintiff Syntek Capital, AG is incorporated under the laws of Germany, with its principal place of business in Pullach, Germany. Syntek is a firm that invests primarily in businesses in the media and technology sectors. Plaintiff Syntek Capital Beteiligungs GmbH (formerly known as CMOO Vermoegensverwaltung 017, GmbH) is a German limited liability company that is wholly-owned by Syntek Capital, AG.

5. Defendant Welch is a natural person who resides at 153 S. Lake Avenue, Albany, New York 12208. Welch is no longer with C2.

6. Fairbanks is deceased. Defendant Kimberly A. Fairbanks, 11494 East Caribbean Lane, Scottsdale, Arizona, 85255, Fairbanks's surviving spouse, is the personal representative of Fairbanks's Estate.

## Jurisdiction And Venue

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8. Venue is proper pursuant to 28 U.S.C. § 1391(a).

## Factual Background

9. C2 was formed as ChromaCopy, Inc. in 1999 by David Manning ("Manning") (as President and Chief Operating Officer) and Amnon Bar-Tur ("Bar-Tur") (as Chief Executive Officer and Chairman of the Board). C2 hired Fairbanks as its CFO because of his sterling reputation as Chief Financial Officer of Blockbuster, Inc., the home-video rental company. Within a year, Fairbanks became C2's CEO and Welch became C2's CFO.

10. In or around March 2000, Syntek acquired approximately 10 percent of the outstanding share capital of C2 by acquiring shares of C2 held by Mr. Bar-Tur and Mr. Sam Humphreys ("Humphreys"). Humphreys was a Co-CEO of Syntek. Around that time, Manning became Vice Chairman of the Board and Bar-Tur became Vice-Chairman of the Board but both Manning and Bar-Tur were removed from any position as an officer of C2.

11. In or around November 2000, Fairbanks and Welch approached Syntek to make an additional investment in C2.

12. In support of C2's investment solicitation, Fairbanks and Welch provided Syntek with the following: (1) unaudited financial statements as of September 30, 2000; (2) estimates for full-year 2000 performance; and (3) budgets for 2001. The unaudited financial statements as of September 30, 2000 disclosed positive EBITDA of $7.8 million. The full-year 2000 estimate disclosed $7 million of positive EBITDA for the year ended December 31, 2000 and $15.9 million of positive *pro forma* EBITDA for the same period. (Although the $7 million of year-end EBITDA following $7.8 million of nine-month EBITDA indicates a fourth quarter loss, a slow fourth quarter was and is typical in C2's industry.) Welch and Fairbanks represented these full-year figures were predicated on the *actual* results for the nine months ending September 30, 2000.

3

13. Negotiations over the proposed investment began in mid-January 2001 and continued through mid- to late-February 2001. During this time, in numerous meetings and phone calls between Humphreys and Bar-Tur from Syntek, on the one hand, and Welch and Fairbanks from C2, on the other hand, Welch and Fairbanks repeatedly represented that the $7.8 million nine-month results and the $7 million and $15.9 million projections, were accurate and could be relied on by Syntek.

14. Syntek decided to make a $10 million investment in C2 in late February 2001 in reliance on the repeated representations by Fairbanks and Welch that C2 had $7.8 million of actual EBITDA and would have the $7 million of EBITDA and the $15.9 million of *pro forma* EBITDA for 2000. On February 23, 2001, Syntek signed a Share Purchase Agreement pursuant to which a wholly-owned subsidiary of Syntek, plaintiff CMOO Vermoegensverwaltung 017, GmbH, purchased 2,079,002 shares of C2's Series A Preferred Shares for (i) $6,127,200 of cash, and (ii) assumption of previously issued debt by Syntek to C2 in the amount of $3,827,800, for a total consideration of $9,955,000.

15. Syntek would not have made the approximately $10 million investment if the true facts regarding C2 had been disclosed to Syntek before it made its investment in C2.

16. Fairbanks resigned as C2's CEO around the time of Syntek's February 2001 investment. Manning replaced Fairbanks as CEO.

17. In or around May 2001, Manning provided Humphreys and Bar-Tur a draft of C2's audited financial statements for 2000 prepared by Goldstein Golub Kessler LLP, an accounting firm based in the United States. These draft financial statements revealed EBITDA for the year ended December 31, 2000 of *negative* $2.7 million (*i.e.*, a *loss* of nearly $3 million), rather than the positive EBITDA of $7 million and the positive *pro forma* EBITDA of

4

$15 9 million that Welch and Fairbanks repeatedly represented to Humphreys and Bar-Tur in early 2001, and on which Syntek relied when it decided to invest in C2.

18. On or about June 17, 2001, representatives of Syntek summoned Welch to Munich, Germany to meet with Syntek's board to explain the drastic discrepancy between C2's unaudited and audited financial statements as of September 30, 2000 and between C2's projected and actual EBITDA for 2000. At the meeting, Welch admitted that he intentionally altered C2's financial statements for the nine months ending September 30, 2000. Specifically, in December 2000, after he had received and compiled the actual financial results from C2's field offices, Welch knowingly inflated the gross margin figure because it appeared "too low" based on historical performance. Welch also admitted omitting numerous large items of expense in quarterly financial statements previously delivered to Syntek.

19. Fairbanks had been aware of Welch's manipulations of financial data. Welch submitted all financial information, including the financial results from the field officers and the financial projections based thereon, to Fairbanks prior to their being disseminated to Syntek.

20. C2's anemic earnings rendered it impossible to service debt that C2 incurred largely during Fairbanks's tenure as CEO. (Had the earnings been as represented by Welch and Fairbanks during the negotiations in January and February 2001, C2 could have serviced the Fairbanks-era debt.) On October 10, 2001, C2 filed for bankruptcy under chapter 11 of Title 11 of the United States Code.

21. Because of the misrepresentations and omissions of Welch and Fairbanks, the price of C2 shares purchased by Syntek was artificially inflated – indeed the C2 shares were essentially worthless – at the time of Syntek's purchase.

## First Claim for Relief
## (Fraudulent Inducement)

22. Plaintiffs repeat and reallege each and every averment contained above as though fully set forth herein.

23. Welch and Fairbanks, and others in concert with them, represented to Syntek that C2 had generated $7.8 million of EBITDA for the nine-month period ended September 30, 2000. Welch knew that such figure was false and misleading. Welch and Fairbanks also omitted large items of expense in quarterly financial statements delivered to Syntek including employee bonuses, professional fees, and restructuring charges

24. Welch and Fairbanks had no good faith or reasonable belief at the time they made the representation to Syntek that C2 would have $7 million of EBITDA and $15.9 million of *pro forma* EBITDA in 2000. Indeed, in December 2000, after Welch had received and compiled the actual financial results from C2's field offices, Welch knowingly inflated the gross margin figure because it appeared "too low" based on historical performance.

25. Welch and Fairbanks made the false representations to induce Syntek to invest the $10 million in C2.

26. Syntek justifiably relied on Welch's and Fairbanks' misrepresentations. As CEO and CFO of C2, respectively, Fairbanks and Welch were in a position to know C2's finances and to make representations with respect thereto.

27. Syntek has been damaged in an amount not less than $10 million as a direct and proximate result of the false representations made by Fairbanks and Welch.

## Second Claim for Relief
### (Constructive Fraud)

28. Plaintiffs repeat and reallege each and every averment contained above as though fully set forth herein.

29. Plaintiffs, on the one hand, and Fairbanks and Welch, on the other hand, shared a confidential or fiduciary relationship because of Plaintiffs' earlier investment in C2 and because two members of Syntek Capital, AG's executive team (Humphreys and Bar-Tur) sat on C2's board of directors when C2 approached Syntek to make the additional $10 million investment. Additionally, Fairbanks and Welch, by virtue of their expertise and positions at C2, had superior knowledge about C2's finances as compared to Syntek's knowledge.

30. The repeated misrepresentations by Welch and Fairbanks concerning $7 million of EBITDA and $15.9 million of *pro forma* EBITDA induced Syntek to invest the $10 million in C2.

31. Welch and Fairbanks had no good faith or reasonable belief at the time they made the representation that C2 would have $7 million of EBITDA and $15.9 million of *pro forma* EBITDA in 2000, thereby breaching their fiduciary duty to Syntek Capital AG.

32. Syntek has been damaged in an amount not less than $10 million as a direct and proximate result of the false representations by Welch and Fairbanks.

## Third Claim for Relief
### (Negligent Misrepresentation)

33. Plaintiffs repeat and reallege each and every averment contained above as though fully set forth herein.

34. Welch and Fairbanks owed a duty to Syntek not to misrepresent C2's financial results and projections during the negotiations leading to Plaintiff's $10 million investment. Welch and Fairbanks had unique knowledge about C2's finances and, through their meetings and

7

conversations with Syntek, knew Syntek would rely on their representations about C2's financial results and projections to make their investment decision

35. Welch and Fairbanks breached that duty by negligently representing that C2 would have $7 million of EBITDA and $15.9 million of *pro forma* EBITDA for 2000.

36. Syntek relied on Welch's and Fairbanks' negligent misrepresentations.

37. Syntek has been damaged in an amount not less than $10 million as a direct and proximate result of Welch's and Fairbanks' negligent misrepresentations.

### Fourth Claim for Relief
### (Breach of Fiduciary Duty)

38. Plaintiffs repeat and reallege each and every averment contained above as though fully set forth herein.

39. Plaintiffs, on the one hand, and Welch and Fairbanks, on the other hand, shared a fiduciary relationship because of Plaintiffs' earlier investment in C2 and because two members of Syntek Capital, AG's executive team (Humphreys and Bar-Tur) sat on C2's board of directors when C2 approached Syntek to make the additional $10 million investment. Additionally, Welch and Fairbanks, by virtue of their expertise and position at C2, had superior knowledge about C2's finances as compared to Syntek's knowledge

40. The fiduciary duty owed by Welch and Fairbanks to plaintiffs was breached by the repeated misrepresentations by Welch and Fairbanks concerning $7 million of EBITDA and $15.9 million of *pro forma* EBITDA which induced Syntek to invest the $10 million in C2. Welch and Fairbanks also omitted large items of expense in quarterly financial statements delivered to Syntek including employee bonuses, professional fees, and restructuring charges

41. Syntek has been damaged in an amount not less than $10 million as a direct and proximate result of Welch's and Fairbanks's breach of fiduciary duty.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for judgment as follows:

(a) Awarding Plaintiffs compensatory damages in an amount to be determined at trial plus interest.

(b) Awarding Plaintiffs the costs and expenses of this litigation, including reasonable attorneys' fees, experts' fees, and other costs and disbursements.

(c) Awarding Plaintiffs such other and further relief as the Court deems just and proper.

<u>Jury Trial Demanded</u>

Plaintiffs hereby demand a trial by jury

Dated:  New York, New York
        February 9, 2005

                            Respectfully submitted,

                            GRANT & EISENHOFER P.A.

                            By: *James R. Banko* (signature)
                                 James R. Banko
                                 N.D.N.Y. Bar No. 512897
                            445 Park Avenue, 9th Floor
                            New York, New York 10022
                            Tel: (212) 755-6501
                            Fax: (212) 755-6503
                            jbanko@gelaw.com

                            GRANT & EISENHOFER P.A.
                            Stuart M. Grant
                            N.D.N.Y. Bar No. 512916
                            Chase Manhattan Centre
                            1201 N. Market, Suite 2100
                            Wilmington, Delaware 19801
                            Tel: (302) 622-7000
                            Fax: (302) 622-7100

                            Attorneys for Plaintiffs

OF COUNSEL:

James J. Sabella
Grant & Eisenhofer P.A.
445 Park Avenue, 9th Floor
New York, New York 10022